Darren C. Barreiro, Esq.
Robert J. Flanagan III, Esq.
**GREENBAUM, ROWE, SMITH & DAVIS LLP**
Metro Corporate Campus One
P.O. Box 5600
Woodbridge, New Jersey 07095
(732) 549-5600
dbarreiro@greenbaumlaw.com
rflanagan@greenbaumlaw.com
Attorneys for Plaintiff Amber Road, Inc.

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMBER ROAD, INC.,<br><br>                           Plaintiff,<br>v.<br><br>AMISH SHETH,<br><br>                           Defendant. | Case No.<br><br>*Document Electronically Filed*<br><br><br>**COMPLAINT** |

Plaintiff Amber Road, Inc. ("Plaintiff" or "Amber Road"), by and through its attorneys Greenbaum, Rowe, Smith & Davis LLP, as and for its complaint against Amish Sheth ("Sheth") alleges as follows:

### THE PARTIES

1.     Plaintiff Amber Road is Delaware corporation with its principal place of business located at One Meadowlands Plaza, East Rutherford, New Jersey.

2.     Amber Road is a leading provider of global trade management software, and is a multi-national, publically traded company.

3.     Upon information and belief, Defendant Sheth is domiciled in and a citicen of the Commonwealth of Virginia and resides at 8096 Westchester Drive, Vienna, Virginia.

3778282.3

4. Defendant Sheth, is a software developer who, until recently, was the Chief Technology Officer of Amber Road. Throughout his employment with Amber Road, Sheth frequently traveled to New Jersey to perform business and attend meetings; directly reported to supervisors based in New Jersey; and entered into confidentiality agreements governed by New Jersey law.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, as Plaintiff's cause of action pursuant to 18 U.S.C. § 1030 *et seq.* presents a federal question.

6. This Court also has jurisdiction over this action pursuant to 28 U.S.C §1332 (a)(1), as Plaintiff Amber Road is domiciled in the State of New Jersey, and Defendant Sheth is domiciled in the Commonwealth of Virginia, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to these claims occurred in the District of New Jersey.

## FACTS COMMON TO ALL COUNTS

### A. The Nature of The Case

8. This lawsuit arises out of Sheth's breaches of a confidentiality agreement and misappropriation of tremendously valuable trade secrets developed and owned by Amber Road, a leading manufacturer of global trade management ("GTM") software. After grooming Sheth for more than eight years, and entrusting him with high level access to Amber Road's trade secrets, including the very source codes that make Amber Road's business unique and successful, Sheth has misappropriated those trade secrets for his own benefit.

9. Plaintiff brings this action in order to obtain a judgment that Sheth has (i)

breached the relevant provisions of his confidentiality agreement with Amber Road by disclosing and improperly using Amber Road trade secret, confidential or proprietary information; (ii) violated N.J.S.A. 56:15-1, et seq. by misappropriating Amber Road trade secret, confidential or proprietary information; (iii) violated the Federal Computer Fraud and Abuse Act (18 U.S.C. § 1030 et seq.) by knowingly exceeding his authorized access on Amber Road's protected computer systems with the intent to defraud, and furthering that intent to defraud by improperly obtaining Amber Road's highly valuable trade secret, confidential, or proprietary information.

10. As a result, Amber Road hereby requests (i) an order permanently enjoining Defendant from disclosing any of Amber Road trade secret, confidential or proprietary information; (ii) an order requiring Sheth to specifically perform his obligations under the confidentiality agreement by returning any trade secret, confidential or proprietary information in his possession or under his control; and (iii) damages related to his improper disclosure of Amber Road trade secret, confidential or proprietary information to any third party, including to Amazon.com, Inc. ("Amazon"), Sheth's new employer.

**B.    Plaintiffs' Business And Trade Secrets**

11. Since at least 2012, Amber Road has been a leader in the field of GTM solutions. GTM solutions automate import and export processes to enable goods to flow unimpeded across international borders in the most efficient, compliant and profitable way. Amber Road's solutions use a combination of enterprise-class software, intelligent trade content, and a global trade network that connects supply chain participants such as importers, exporters, freight forwarders, customs brokers and transportation carriers.

12. Amber Road's success is the direct result of the software, trade content and global network that it has created through years of hard work and financial expenditures in excess of $100 million.

13. Amber Road's trade secret, confidential or proprietary information can be broken down into three separate categories, namely, (i) Amber Road's software technology; (ii) Amber Road's trade content; and (iii) Amber Road's marketing and processes (collectively "Trade Secrets").

14. Amber Road's software technology, including source and object code, documentation, design specifications, software development techniques, compilation strategies for content, flowcharts, user evaluations and reactions, file and data formats, and performance test results have been developed over the past 13 years with the expenditure of millions of dollars. These technologies are collectively called Amber Road's Enterprise Technology Framework ("ETF").

15. ETF is the DNA of Amber Road's products. It gives Amber Road a huge competitive advantage in the marketplace and forms the backbone of Amber Road's business as a leader in technology GTM solutions. Amber Road's GTM software includes products that manage transportation costs, optimize logistics, provide shipment tracking and visibility, ensure compliance with import and export regulations, and assist companies in the implementation and use of preferential and free-trade agreements. Its solutions automate the areas of government regulatory compliance for imports and exports and help companies develop classifications for the goods they sell, calculate total landed cost for the goods they import or export, and understand and manage taxes, duties, and import and export license requirements.

16. Amber Road's trade content includes, inter alia, harmonized tariff codes, restricted party lists, export regulations, import regulations, shipping documents, preferential duties and taxes, specifications involving free trade agreements, transportation rates, and sailing schedules. This trade content is created from daily contact with government agencies and

transportation carriers in 145 countries. Such content was created over years of hard work, through the expenditure of millions of dollars and confidential government contacts. No other company in the world offers the level and depth of trade content provided by Amber Road.

17. Amber Road's Trade Secrets provide Amber Road with a substantial competitive advantage over its competitors.

18. Amber Road has taken substantial steps to secure the safety and confidentiality of Amber Road's Trade Secrets, including but not limited to, (i) limiting access to Amber Road's Trade Secrets using logical access, passwords, encryption and other security mechanisms; (ii) requiring all employees execute confidentiality agreements and acknowledgements after reading Amber Road's Business Conduct Guidelines ("BCG") which sets forth elaborate details to protect Amber Road's Trade Secrets; (iii) ensuring upon termination that employee continues its duty not to disclosure information; (iv) limiting usage rights and eliminating such rights upon termination; (v) physically securing the building, equipment and computer equipment; and (vi) requiring non-disclosure agreements with any customers, vendors or consultants.

**C.     Defendant's Employment With Amber Road**

19. Sheth was hired by Amber Road in March 2007 as a Director of Information Engineering. Over the course of the next eight years, Sheth received several promotions, becoming the Chief Software Architect in August 2007, the V.P. of Global Engineering in November 2008, and finally Amber Road's Chief Technology Officer in July 2014.

20. Upon his hire, and in consideration for his hire, on March 14, 2007, Sheth entered into, inter alia, a Confidential Information, Assignment of Rights, Non-Solicitation and Non-Competition Agreement (the "Agreement") with Amber Road. The Agreement was entered into in New Jersey and provided that it would be enforced and construed in accordance with the laws of the State of New Jersey.

3778282.3

21. The Agreement prohibited Sheth from duplicating, removing, transferring or using any of Amber Road's confidential, proprietary or trade secret information, unless as required by his duties, and also from making "any unauthorized disclosure of trade secrets or confidential information to any third parties."

22. The Agreement provided that upon termination, or at any time upon the request of Amber Road, Sheth was required to deliver and return any confidential, proprietary, or trades secret information to Amber Road.

23. The Agreement also provided that any work product created by Sheth belonged to Amber Road, and that Sheth was required to deliver all materials and work product in his possession or control upon termination.

24. The Agreement required that Sheth perform any other acts deemed necessary to carry out the intent of the Agreement.

25. Pursuant to the Agreement, Sheth also agreed that any breach by him will cause Amber Road irreparable injury and that Amber Road shall be entitled to preliminary and permanent injunctive relief without posting a bond in order to remedy the breach.

26. Throughout the course of his employment with Amber Road, Sheth's responsibilities included managing all of Amber Road's technologies. This included leading the engineering team in the design, programming, testing and documentation of the firm's software products, and designing and development of the firm's core technologies used to build, test and deliver software products, namely the ETF.

27. During his employment, Sheth was granted continual unrestricted access to all of Amber Road's Trade Secrets, and did access those Trade Secrets on a routine basis.

28. Also upon his hire in 2007, Sheth was appointed to the Amber Road Senior Management Team ("SMT"). The SMT is comprised of Amber Road's CEO and the heads of

each of Amber Road's departments, and prior to Sheth's resignation, had 13 members out of approximately 800 employees. The SMT's primary purpose is to develop plans and strategies that encompass all critical aspects of Amber Road's business, including product strategy, operations, competition, staffing, organization and finance. In addition, the SMT develops and considers Amber Road's budgets, controls, investments and acquisitions. As a result, the 13 members on the SMT, including Sheth, have direct contact with, and utilize, Amber Road's Trade Secrets to perform their functions.

29. The overwhelming majority of SMT meetings were held in New Jersey, and Sheth would travel to New Jersey to attend the SMT meetings.

**D.     Sheth's Resignation And Misappropriation**

30. In or about late-May 2015, Sheth submitted a resignation letter notifying Amber Road that he was accepting a position with Amazon, as the Director of Amazon Fulfillment Technologies.

31. Upon information and belief, Sheth had been negotiating with Amazon for several months and Amazon hired Sheth primarily due to his knowledge of Amber Road's Trade Secrets. Amazon, a former customer of Amber Road, is a direct competitor that provides similar GTM services as Amber Road not only with respect to its own internal sales, but also to the myriad of other vendors and suppliers that utilize its services.

32. Upon information and belief, Amazon offered, and Sheth accepted, a compensation package that was several times greater than his compensation package at Amber Road, and substantially greater than compensation packages offered to employees with Sheth's qualifications throughout the industry. Upon information and belief, this excessive compensation package was offered by Amazon due to Sheth's knowledge of Amber Road's Trade Secrets.

33. On June 8, 2015, Amber Road instructed Sheth that he was prohibited from deleting files from any company issued devices, including a Dell Latitude laptop and Microsoft Surface Pro tablet that was issued to him by Amber Road (collectively, the "Equipment"). However, ignoring these instructions, Sheth deleted numerous files from the Equipment on and after June 8, 2015.

34. On June 11, 2015, Sheth formally resigned from Amber Road, said date being the last day of his employment. At the time of his resignation, Sheth signed a Termination Acknowledgment in which he stated that he had returned all Confidential Information (as defined in the Agreement) to Amber Road.

35. However, prior to his resignation, Sheth copied Amber Road Trade Secrets to at least 8 different storage devices including but not limited a (i) Western Digital MyPassport 1 TB external hard drive; (ii) Transcend JetFlash 4 Gb USB Flash drive; (iii) SanDisk Cruzer USB Flash Drive; (iv) SanDisk Cruzer Blade USB Flash Drive; (v) Innostar USB Flash drive; (vi) 1 Gb USB Flash drive; (vii) Pen Drive; and (viii) Seagate OneTouch/Backup Plus 1 TB (collectively, the "Storage Devices").

36. On July 16, 2015, Amber Road contacted Sheth by letter and informed him that numerous unauthorized storage devices had been connected by him to the Equipment and used to improperly copy Amber Road's Trade Secrets. Pursuant to Section 6(d)(iii) of the Agreement, which required Sheth to take necessary steps to carry out the intent of the Agreement, Amber Road demanded that Sheth return the Storage Devices, all of which were last in his possession.

37. On July 22, 2015, Sheth responded that he was not in possession of any of the Storage Devices, but refused to explain his authorized use of the Storage Devices or where the Storage Devices were now located.

38. On August 6, 2015, Amber Road sent Sheth a second letter demanding either the

return of the Storage Devices or sufficient information so that Amber Road could locate the Storage Devices, all of which were last in his possession.

39. On August 13, 2015, Sheth responded that he was "busy" and that he would not be providing any information regarding the location of any of the Storage Devices, even though he had used many of the devices within the last several weeks and should have known their location.

## COUNT ONE
### (Violation of the N.J. Trade Secrets Act – N.J.S.A. 56:15-1 et seq.)

40. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 39 as if more fully set forth at length herein.

41. As aforementioned, Amber Road developed the Amber Road Trade Secrets, which consist of, inter alia, (i) Amber Road's software technology; (ii) Amber Road's trade content; and (iii) Amber Road's marketing and processes.

42. Amber Road created its Trade Secrets through years of hard work, confidential relationships and substantial financial investment in excess of $100 million.

43. Amber Road's Trade Secrets are trade secrets that are subject to protection as they are information that provides Amber Road with an economic advantage and is not readily known to the public.

44. Amber Road has taken substantial steps to ensure that its Trade Secrets are kept confidential.

45. As a result of the aforementioned conduct, Sheth has misappropriated, and/or threatens to misappropriate such confidential, proprietary trade secret information by utilizing and improperly disclosing such information in his position at Amazon, and as such, is in violation of N.J.S.A. 56:15-1 et seq.

46. In the event that Sheth is allowed to misappropriate, use and disclose Amber Road's trade secrets, Amber Road's business will irreparably harmed.

47. Accordingly, the aforesaid acts of Sheth will cause, without judicial intervention, Amber Road irreparable harm for which there is no adequate remedy at law.

48. By reason of the foregoing, Plaintiff is entitled to an order pursuant to N.J.S.A. 56:15-1, et seq. permanently enjoining Defendant from using and/or disclosing Amber Road's Trade Secrets at any time.

49. By reason of the foregoing, Amber Road has been damaged in an amount to be determined at trial, but believed to be in excess of seventy-five thousand dollars ($75,000.00) for its actual loss caused by the misappropriation.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant as follows:

i) Permanently enjoining Defendant from using and/or disclosing Amber Road's Trade Secrets at any time;

ii) Awarding Plaintiff compensatory, consequential, and punitive damages including reasonable royalties believed to be in excess of seventy-five thousand dollars ($75,000.00);

iii) Awarding Plaintiff costs and attorneys' fees; and

iv) Awarding Plaintiff such other and further relief as this Court deems just and proper.

## COUNT TWO
### (Breach of Contract)

50. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 49 hereof with the same force and effect as if more fully set forth at length herein.

51. In March 2007, Sheth entered into the Agreement in consideration for his employment with Amber Road.

52. The Agreement prohibited Sheth from duplicating, removing, transferring or using any of Amber Road's confidential, proprietary or trade secret information, unless as required by his duties, and also from making "any unauthorized disclosure of trade secrets or confidential information to any third parties."

53. The Agreement provided that upon termination, or at any time upon the request of Amber Road, Sheth was required to deliver and return any confidential, proprietary, or trade secret information to Amber Road.

54. The Agreement also provided that any work product created by Sheth belonged to Amber Road, and that Sheth was required to deliver all materials and work product in his possession or control upon termination.

55. The Agreement required that Sheth perform any other acts deemed necessary to carry out the intent of the Agreement.

56. Pursuant to the Agreement, Sheth also agreed that any breach by him will cause Amber Road irreparable injury and that Amber Road shall be entitled to preliminary and permanent injunctive relief without posting a bond in order to remedy the breach.

57. Upon information and belief, Sheth has breached the Agreement by the acts described above, including but not limited to:

   a. Improperly disclosing Amber Road Trade Secrets to Third Parties;

   b. Improperly duplicating, removing, transferring or using any of Amber Road's Trade Secrets;

   c. Improperly deleting Amber Road Trade Secrets from the Equipment;

   d. Refusing to return Amber Road Trade Secrets in his possession; and

    e. Refusing to assist Amber Road in locating the Storage Devices.

58. In the event that Sheth is allowed to use and disclose Amber Road's Trade Secrets, Amber Road's business will be irreparably harmed.

59. Accordingly, the aforesaid acts of Sheth will cause, without judicial intervention, Amber Road irreparable harm for which there is no adequate remedy at law.

60. By reason of the foregoing, Plaintiff is entitled to an order permanently enjoining Defendant from duplicating, removing, transferring, using, disclosing, or communicating any of Amber Road's Trade Secrets.

61. By reason of the foregoing, Plaintiff is entitled to an order requiring Sheth to specifically perform his obligations under the Agreement by returning any trade secret, confidential or proprietary information in his possession or under his control, including but not limited to the Storage Devices.

62. By reason of the foregoing, Amber Road has been damaged in an amount to be determined at trial, but believed to be in excess of seventy-five thousand dollars ($75,000.00) for its actual loss caused by the breach of contract.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant as follows:

  i) Permanently enjoining Defendant from duplicating, removing, transferring, using, disclosing, or communicating Amber Road's Trade Secrets at any time;

  ii) Requiring Defendant to specifically perform his obligations under the Confidentiality Agreement by returning any trade secret, confidential or proprietary information in his possession or under his control, including but not limited to the Storage Devices;

  iii) Awarding damages in an amount to be determined at trial, but believed to

3778282.3

be in excess of seventy-five thousand dollars ($75,000.00);

iv) Awarding Plaintiff costs and attorneys' fees; and

v) Awarding Plaintiff such other and further relief as this Court deems just and proper.

## COUNT THREE
### (Violation of Computer Fraud and Abuse Act-- 18 U.S.C. § 1030 et seq.)

63. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 62 as if more fully set forth at length herein.

64. Sheth, knowingly and with the intent to defraud, accessed Amber Road's protected computer systems in excess of his authorized access. Amber Road's computer systems are "protected computers" as that term is defined in the Computer Fraud and Abuse Act.

65. By means of this conduct, Sheth furthered the intended fraud and obtained valuable, proprietary information of Amber Road, including Amber Road Trade Secrets.

66. In the event that Sheth is allowed to retain, use and disclose Amber Road's Trade Secrets, Amber Road's business will irreparably harmed.

67. Accordingly, the aforesaid acts of Sheth will cause, without judicial intervention, Amber Road irreparable harm for which there is no adequate remedy at law.

68. By reason of the foregoing, Plaintiff is entitled to an order to permanently enjoining Defendant from using and/or disclosing Amber Road's Trade Secrets at any time.

69. By reason of the foregoing, Amber Road has been damaged in an amount to be determined at trial, but believed to be in excess of seventy-five thousand dollars ($75,000.00) for its actual loss caused by Sheth's violation of the Computer Fraud and Abuse Act.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant as follows:

i) Permanently enjoining Defendant from using and/or disclosing Amber

Road's Trade Secrets at any time;

ii) Awarding damages in an amount to be determined at trial, но believed to be in excess of seventy-five thousand dollars ($75,000.00);

iii) Awarding Plaintiff costs and attorneys' fees; and

iv) Awarding Plaintiff such other and further relief as this Court deems just and proper.

### COUNT FOUR
### (Violation of New Jersey Computer-Related Offenses Act, N.J.S.A. 2A:38A-3)

70. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 69 as if more fully set forth at length herein.

71. Sheth, knowingly and with the intent to defraud, accessed Amber Road's protected computer systems in excess of his authorized access. Amber Road's computer systems are "protected computers" as that term is defined in the Computer Fraud and Abuse Act.

72. By means of this conduct, Sheth furthered the intended fraud and obtained valuable, proprietary information of Amber Road, including Amber Road Trade Secrets.

73. As a result of Sheth's conduct, Amber Road suffered damage to its business and property.

74. By reason of the foregoing, Plaintiff is entitled to an order to permanently enjoining Defendant from using and/or disclosing Amber Road's Trade Secrets at any time.

75. By reason of the foregoing, Amber Road has been damaged in an amount to be determined at trial, but believed to be in excess of seventy-five thousand dollars ($75,000.00) for its actual loss caused by Sheth's violation of the Computer Fraud and Abuse Act.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant as follows:

v) Permanently enjoining Defendant from using and/or disclosing Amber

3778282.3

-15-

   Road's Trade Secrets at any time;

vi)   Awarding damages in an amount to be determined at trial, but believed to be in excess of seventy-five thousand dollars ($75,000.00);

vii)  Awarding Plaintiff costs and attorneys' fees; and

viii) Awarding Plaintiff such other and further relief as this Court deems just and proper.

> **GREENBAUM, ROWE, SMITH & DAVIS LLP**
> Attorneys for Plaintiff
>
> By:  s/Darren C. Barreiro
>      Darren C. Barreiro

Dated: September 21, 2015

## CERTIFICATION

I hereby certify, upon information and belief, that the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration.

> **GREENBAUM, ROWE, SMITH & DAVIS LLP**
> Attorneys for Plaintiff
>
> By:  s/Darren C. Barreiro
>      Darren C. Barreiro

Dated: September 21, 2015

3778282.3